HAROLD G. BIEGLER AND DOROTHY R. BIEGLER, APPELLANTS, *v.* NEVADA REAL ESTATE DIVISION, STATE OF NEVADA, RESPONDENT.

No. 9036

October 22, 1979

601 P.2d 419

*Fahrenkopf, Mortimer, Sourwine, Mousel and Pinkerton,* and *Douglas A. Sloane,* Reno, for Appellants.

*Richard H. Bryan,* Attorney General, and *James I. Barnes, III,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

By the Court, HOYT, D. J.:[1]

This is an appeal from an order of the district court affirming a decision of the Nevada Real Estate Advisory Commission.

---

[1]The Governor designated the Honorable Merlyn H. Hoyt, Judge of the Seventh Judicial District Court, to sit in the place of THE HONORABLE GORDON THOMPSON, Justice, who was disqualified. Nev. Const. art. 6, § 4.

On February 8, 1974, Bernice Felkins, a home-buyer, wrote to the Nevada Real Estate Division alleging that Harold Biegler, a licensed real estate broker, had failed to provide her with a closing statement within one month of the completion of a sales transaction. The letter also stated that Harold Biegler had informed Felkins that the property in question belonged to a couple in Germany, when in fact, the property belonged to Biegler and his wife Dorothy, a licensed real estate sales agent. Felkins' allegations were substantially set forth in a document prepared at the request of the Division, signed by her, and submitted on March 8, 1974. Although this document was labeled an "affidavit" by the Division, it was not notarized, sworn, or affirmed in any other manner.

Based upon information contained in the "affidavit", the Division prepared a "Statement of Fact", which Felkins signed. After conducting an investigation, the Division filed a complaint against the Bieglers on January 7, 1975. A hearing was held before the Nevada Real Estate Advisory Commission on February 6, 1975, at which the Bieglers appeared without legal counsel. The Division called Harold Biegler as a witness. Biegler testified that the closing statement had not been delivered to Felkins and her husband until February 12, 1974. Biegler further testified that this first closing statement did not satisfy the Felkins, and that he subsequently had Valley Title Company prepare a second closing statement. He also stated that though he and Dorothy Biegler were the owners of the property sold to the Felkins, the Bieglers' interest had been orally disclosed prior to the time of sale. Harold Biegler emphasized that Dorothy Biegler had taken no part in the transaction. The Division also introduced into evidence several documents relating to the sale of the property, none of which disclosed the Bieglers' interest therein.

The only evidence relevant to this appeal presented by the Bieglers was a copy of the letter written by Bernice Felkins to the Commission, and the "Statement of Fact" signed by Felkins.

On March 19, 1975, the Commission rendered findings of facts, conclusions of law and a decision. The Commission concluded that (1) the Bieglers had failed to disclose their interest in the property in writing; (2) the Bieglers had failed to timely deliver a closing statement; and, (3) the first closing statement sent by the Bieglers was inadequate. Pursuant to these conclusions, the Commission decided the Bieglers had both violated

NRS 645.290[2] and NRS 645.630(2), (9), (14) and (18),[3] as well as Section VII(8) of the "Rules and Regulations Amending Rules and Regulations of Nevada Real Estate Advisory Commission" (1973).[4] An order was entered suspending each of their licenses for a period of ninety days.

The Bieglers appealed the decision of the Commission to the district court. The district court sustained the decision, and the Bieglers perfected this appeal. We turn first to a review of the charges against Harold Biegler.

1. A license may be suspended if the Commission finds a licensee has engaged in any of the conduct proscribed by NRS 645.630. Harold Biegler's license was suspended for violating four subsections of the statute. Though we find the evidence

[2]NRS 645.290 provides:

"Within 1 month after the closing of a transaction in which title to real property is conveyed from a vendor to a purchaser through a licensed real estate broker, such broker shall deliver to the vendor and purchaser a written closing statement which shall include an accounting of all money and property and show in detail the receipts or disbursements of each item as it is charged or credited to the vendor or purchaser. If the transaction is closed through escrow and the escrow holder renders a statement which reveals such information, that shall be deemed compliance with this section on the part of the broker."

[3]NRS 645.630 provides in pertinent part:

"The commission may suspend, revoke or reissue subject to conditions any license issued under the provisions of this chapter at any time where the licensee has, by false or fraudulent representation, obtained a license, or where the licensee, whether or not acting as a licensee, is found to be guilty of:

". . . .

"2. Making any false promises of a character likely to influence, persuade or induce.

". . . .

"9. Disregarding or violating any of the provisions of this chapter, chapter 119 of NRS or of any regulation promulgated under either chapter.

". . . .

"14. Negligence, or failure to disclose or to ascertain and disclose to any person with whom such licensee is dealing, any material fact, data or information concerning or relating to the property with which such licensee is dealing, which such licensee knew.

". . . .

"18. Demonstrated negligence or incompetence in performing any act for which he is required to hold a license."

[4]Section VII(8) of the "Rules and Regulations Amending Rules and Regulations of Nevada Real Estate Advisory Commission" (1973) provides:

"The licensee shall not acquire an interest in or buy for himself, any member of his immediate family, his firm or any member thereof, or any entity in which he has a substantial ownership interest, property listed with him, or his firm, without making the true position known to the listing owner in writing, and in selling property owned by him or in which he has such interest, the facts shall be revealed to the purchaser in writing."

supports the decision that Biegler violated two of these subsections, NRS 645.630(9) and NRS 645.630(18), we find the evidence insufficient as to the violations of NRS 645.630(2) and NRS 645.630(14).

The basis of the Commission's decision that Harold Biegler violated NRS 645.630(9) is the Commission's finding that he engaged in conduct proscribed by NRS 645.290 and Section VII(8).

NRS 645.290 requires a licensed broker to deliver a closing statement to the purchaser within one month after the closing of a transaction. Biegler admitted that he failed to comply with this requirement and, thus, the evidence clearly supports the Commission's finding that Biegler violated NRS 645.290. Section VII(8) requires a licensee who sells property owned by him to make a written disclosure of his ownership to the purchaser, and Biegler's admission, as well as documentary evidence introduced by the state, established that Biegler failed to make such a disclosure. Therefore, the Commission's finding that Biegler violated Section VII(8) and NRS 645.290 is supported by the evidence, and that part of the Commission's decision is affirmed.

The Commission's conclusion that Harold Biegler violated NRS 645.630(18) was predicated upon the fact that when Harold finally did send a closing statement, the statement was inadequate. The Commission concluded, and we agree, that this conduct indicates "[d]emonstrated negligence or incompetence", within the meaning of NRS 645.630(18). Accordingly, the portion of the Commission's decision finding a violation of NRS 645.630(18) is affirmed.

We do not agree, however, that the Commission's decision that Biegler violated NRS 645.630(2) and NRS 645.630(14) is supported by sufficient evidence. The only evidence indicating that Biegler made any false promises to Felkins, or that Biegler failed to orally disclose material facts relating to the property, is found in the Felkins' letter and "Statement of Fact". Though admissible in evidence,[5] these statements are hearsay, and without corroboration will not support the suspension of a license. *See* Nardoni v. McConnell, 310 P.2d 644 (Cal. 1957); Walker v. City of San Gabriel, 129 P.2d 349 (Cal. 1942). On

---

[5]Since the Felkins statement was introduced by the Bieglers, they do not have standing to raise any procedural derelictions in its admission. *Cf.* Kuk v. State, 80 Nev. 291, 392 P.2d 630 (1964); State v. Fouquette, 67 Nev. 505, 534, 221 P.2d 404, 419 (1950). Thus, the admissibility of the hearsay statement in this case is distinguishable from the situation presented in Laman v. Nevada Real Estate Adv. Comm'n, 95 Nev. 50, 589 P.2d 166 (1979).

the record before us, there is no corroborating evidence indicating that Harold Biegler violated NRS 645.630(2) and NRS 645.630(14) and, therefore, that portion of the Commission's decision is reversed.

2. The record fails to establish that Dorothy Biegler had any dealings with, or responsibilities to, the Felkins with regard to the sale of the property, and there is no evidence that she committed any of the alleged violations. *See* Rudin v. Nevada R. E. Advisory Comm'n, 86 Nev. 562, 471 P.2d 658 (1970). Therefore, the portion of the Commission's decision suspending Dorothy Biegler's license is reversed.

Accordingly, we remand this case for the imposition of a penalty upon Harold Biegler, consistent with this decision.

MOWBRAY, C. J., and GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.