STATE OF NEVADA, DEPARTMENT OF MOTOR VEHI-
CLES, Appellant, v. GUSTUS VEZERIS, Respond-
ent.

No. 16841

STATE OF NEVADA, DEPARTMENT OF MOTOR VEHI-
CLES, Appellant, v. ALFREDO ALVAREZ, Respond-
ent.

No. 16879

STATE OF NEVADA, DEPARTMENT OF MOTOR VEHI-
CLES, Appellant, v. LAWRENCE A. DEFALCO,
Respondent.

No. 16886

June 20, 1986                                    720 P.2d 1208

*Brian McKay,* Attorney General, Carson City, and *Paul L. Wilkin,* Deputy Attorney General, Las Vegas, for Appellant.

*John G. Watkins,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

The resolution of this consolidation of three appeals rests upon the proper interpretation of NRS 50.325. Because we have concluded that the district courts erred in determining that NRS 50.325 is applicable to administrative proceedings, we reverse the decisions of the district courts.

### THE FACTS

The facts in these three cases are the same or similar in many instances. Each respondent was arrested in Clark County during the latter part of 1984 for driving while under the influence of alcohol. After arrest, each respondent elected to submit to a blood test in order to determine his blood alcohol content. In all three instances, the person who drew the blood samples filled out an affidavit attesting to the identity of the person from whom the blood was drawn, the occupation of the person drawing the blood, and the chain of custody.

After chemical analysis, blood samples from all three respondents showed a blood alcohol content greater than the legal limit of 0.10 percent.[1] Based on the blood alcohol content of respondents, the State of Nevada, Department of Motor Vehicles (DMV) revoked respondents' driving privileges. Pursuant to NRS 484.387,[2] each respondent requested a hearing to review the revocation. At each respondent's hearing, the hearing officer allowed into evidence, over objection by respondents, the affidavit of the person who drew the blood samples. Evidently, the hearing officer used the affidavits to establish that the persons who drew the blood samples were registered nurses.[3]

At the conclusion of each hearing, the hearing officer found substantial evidence to support the revocation of respondent's driving privileges; therefore, the decision of DMV to revoke the driving privileges of respondents was upheld. Thereafter, each respondent petitioned the district court for review of the action taken by the hearing officer. In each instance, the district court ruled that the hearing officer erred in admitting the affidavits into evidence over objections by respondents; therefore, the district court remanded the cases to DMV for new hearings. DMV appealed each decision which resulted in this consolidated appeal.

## DISCUSSION

The affidavits of the persons who drew the blood samples are clearly admissible in administrative proceedings before DMV. *See* NRS 50.315(5). The district courts ruled that, despite NRS 50.315(5), respondents could object to the use of such affidavits and could compel the attendance at the hearings of those persons who drew the blood samples. The district courts found authority for this position in NRS 50.325 which states:

> 50.325   Affidavit of expert as to existence of alcohol or controlled substance:   Procedure for admission.
> 1.   Whenever a person is charged with an offense punish-

---

[1]Respondents had the following blood alcohol contents:
Vezeris 0.25%
Alvarez 0.11%
Defalco 0.16%

[2]NRS 484.387(1) states in relevant part:

> At any time while a person is not eligible for a license, permit or privilege to drive following an order of revocation . . . he may request in writing a hearing by the department to review the order of revocation. . . .

[3]The occupation of the person who drew the blood samples is important because only the results of blood samples drawn by a physician, registered nurse, licensed practical nurse, advanced emergency medical technician, or a medical laboratory technician are admissible in a revocation hearing. NRS 484.393.

able under chapters 453 or 484 of NRS or homicide resulting from driving a vehicle while under the influence of intoxicating liquor or a controlled substance as defined in chapter 453 of NRS, or a chemical, poison or organic solvent, and it is necessary to prove the existence of any alcohol or the existence or identity of a controlled substance, chemical, poison or organic solvent, the prosecuting attorney may request that the affidavit of an expert or other person described in NRS 50.315 be admitted in evidence at the trial or hearing concerning the offense.

2. The request must be made at least 10 days before the date set for the trial or hearing and must be sent to the defendant's counsel and to the defendant, by registered or certified mail by the prosecuting attorney.

3. *If the defendant or his counsel notifies the prosecuting attorney by registered or certified mail at least 96 hours before the date set for the trial or hearing that the presence of the expert or other person is demanded, the affidavit must not be admitted.* A defendant who demands the presence of the expert or other person and is convicted of violating NRS 484.379 or a provision of chapter 484 of NRS for which a driver's license may be revoked shall pay the fees and expenses of that witness at the trial or hearing.

4. If at the trial or hearing the affidavit of an expert or other person has been admitted in evidence, and it appears to be in the interest of justice that the expert or other person be examined or cross-examined in person, the judge, justice of the peace or hearing officer may adjourn the trial or hearing for a period of not to exceed 3 judicial days for the purpose of receiving such testimony. The time within which a preliminary examination or trial is required is extended by the time of the adjournment.

(Emphasis added.) We conclude, however, that the district courts erred in ruling that respondents could object to the use of such affidavits at administrative proceedings.

NRS 50.325 is ambiguous on its face. It is not obvious from a reading of the statute whether it applies to both criminal and civil proceedings or solely to criminal proceedings. Clearly, "defendant," "trial," and "prosecuting attorney" refer to criminal proceedings. However, NRS 50.325 also uses the word "hearing" without indicating whether it is a reference to administrative hearings or criminal preliminary hearings. It is well established that administrative hearings concerning the revocation of driver's licenses are civil in nature, not criminal. *See* Ballard v. State, Motor Vehicle Division, 595 P.2d 1302 (Utah 1979); McDonnell v. Department of Motor Vehicles, 119 Cal.Rptr. 804 (Cal.App. 1975). Therefore, should NRS 50.325 apply solely to criminal

proceedings, administrative proceedings would be exempt from the operation of NRS 50.325.

When a statute is ambiguous, it is our duty to construe that statute "in line with what reason and public policy would indicate the legislature intended." Cannon v. Taylor, 87 Nev. 285, 288, 486 P.2d 493, 495 (1971), *modified on other grounds,* Cannon v. Taylor, 88 Nev. 89, 493 P.2d 1313 (1972). With this standard in mind, we conclude that only defendants in criminal proceedings may object to the use of affidavits of persons drawing blood samples; parties seeking administrative review of driver's license revocations may not object to the use of such affidavits.[4] This interpretation is supported by our review of the legislative history of NRS 50.325. Originally, "district attorney" was used. *See* 1971 Nev. Stats. ch. 477, § 3, at 929. This is clearly a reference to criminal proceedings. This conclusion is not changed by the fact that "prosecuting attorney" was substituted for "district attorney" in NRS 50.325(1) in 1983. *See* 1983 Nev. Stats. ch. 597, § 9, at 1917. "Prosecuting attorney" is the public officer who is appointed or elected to conduct criminal prosecutions on behalf of the state. Black's Law Dictionary 1099 (5th ed. 1979). Also, the statute continually refers to "defendant;" participants in administrative hearings are not generally known as prosecutors or defendants, they are simply known as parties. For the above reasons, we conclude that NRS 50.325 does not give participants in administrative hearings before DMV the right to object to the use of affidavits authorized by NRS 50.315(5).

We are convinced that this decision will result in no violation of respondents' procedural due process rights. It is well settled that the suspension or revocation of a driver's license implicates a protectable property interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Bell v. Burson, 402 U.S. 535 (1971). However, due process is a flexible, not rigid, concept. To determine the requirements of procedural due process in any particular case, a court must balance (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of that private interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's

---

[4]We note that NRS 50.325(4) does permit a judge, justice of the peace or hearing officer to continue the trial or hearing to allow for receiving testimony of an expert if his affidavit has been admitted and the interest of justice requires the testimony. It is apparent that this subparagraph was intended to apply to administrative proceedings; however, this is only made clear by the use of "hearing officer." The first three subparagraphs contain no such clear indication of intent.

interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. Mathews v. Eldridge, 424 U.S. 319, 334-335 (1976).

Applying this balancing test to the procedure of admitting affidavits over objection of respondents, we find no violation of respondents' due process rights. It is true that the private interest of respondents in retaining their driving privileges is substantial and important; however, the governmental interest in keeping its highways safe is also very substantial. *See* Mackey v. Montrym, 443 U.S. 1, 17-18. Also substantial are both the fiscal and administrative burdens if each driver requesting a hearing were entitled to have those persons whose affidavits are admissible pursuant to NRS 50.315(5) present at hearings. Finally, examining the remaining factor, the risk of error is not great. The additional procedural safeguard of having affiants present at the hearings would not significantly lessen any risk of error. The issues at the hearing are not complex; the scope is limited to ascertaining whether the driver refused to submit to a blood, breath or urine test or whether the blood alcohol content was 0.10 percent or greater; therefore, the risk of error is not great. Also, pursuant to NRS 233B.123(4),[5] a driver has the right to call any witnesses; therefore, if he feels that an affidavit is suspect, he can demand the presence of the affiant. Also, pursuant to NRS 50.325(4), the hearing officer can order a three day adjournment should the interests of justice require the examination of an affiant. Additionally, we note that governmental decision-making need not comply with standards that assure perfect, error-free determinations. *See* Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 12-13 (1979). Therefore, the admission of the affidavits authorized by NRS 50.315(5) over objections by respondents at the hearings before DMV is not violative of respondents' procedural due process rights.

## CONCLUSION

We have concluded that parties to administrative hearings before DMV may not object to the use of affidavits authorized by NRS 50.315(5). Also, this is not violative of respondents' due process rights. Accordingly, we reverse the decisions of the district courts remanding these cases for new hearings.

---

[5]NRS 233B.123(4) provides:

Each party may call and examine witnesses, introduce exhibits, cross-examine opposing witnesses on any matter relevant to the issues even though such matter was not covered in the direct examination, impeach any witness regardless of which party first called him to testify, and rebut the evidence against him.